UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGEL DECASTRO, MICHAEL
WALKER, SUSAN CALVO, YONG
ZHANG, IOSIF MULLAEV, and KELLY
MACON, *individually and on behalf of all
others similarly situated*,

                          Plaintiffs,

              v.

THE CITY OF NEW YORK, DAVID
YASSKY, MEERA JOSHI, and THE NEW
YORK CITY TAXI and LIMOUSINE
COMMISSION,

                          Defendants.

No. 16-CV-3850 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Angel DeCastro, Susan Calvo, and Kelly Macon bring this putative class action

against the City of New York and the New York City Taxi and Limousine Commission ("TLC"),

challenging the warrantless seizure of vehicles they owned or operated under the Fourth and

Fourteenth Amendments. Before the Court are the parties' cross-motions for summary judgment.

Bound in large part by the decisions of the Hon. Valerie Caproni in *Harrell v. City of New York*,

the Court concludes that the City's policy or practice of seizing vehicles suspected of being

operated for hire without proper licensing, as applied to individuals whose vehicles bear TLC

license plates and to vehicle owners who have been found liable for a licensing violation in the 36

months before their vehicles are seized, violates the Fourth Amendment. The Court concludes,

however, that the City's procedure for seizing and retaining vehicles allegedly subject to forfeiture

does not violate the Due Process Clause of the Fourteenth Amendment. Accordingly, both parties' cross-motions for summary judgment are granted in part and denied in part.[1]

## BACKGROUND[2]

### A. Statutory Framework and Enforcement Policy

#### 1. Vehicle Seizures

Under § 19–506(b)(1) of the New York City Administrative Code, it is illegal to knowingly operate or allow another to operate any vehicle for hire "without first having obtained or knowing that another has obtained a license" for the vehicle. N.Y.C. Admin. Code § 19–506(b)(1).[3] A violation of § 19–506(b)(1) is a crime, punishable by a fine, a term of imprisonment, or both. *See id.*[4]

Under § 19–506(h)(1), any officer or designated TLC employee may seize a vehicle he or she has "probable cause to believe is operated or offered to be operated without a license" in

---

[1] Plaintiffs have withdrawn their claims against Defendants David Yassky and Meera Joshi. *See* Pls.' Mem. in Further Supp. of Mot. for Summ J. & in Opp'n to Defs.' Cross-Mot. for Summ J. ("Pl. Reply Mem.") at 25 (Dkt. 92). The Clerk of Court is respectfully directed to remove these Defendants from the caption.

[2] These facts are drawn from the parties' submissions in connection with their cross-motions for summary judgment, including Plaintiffs' Rule 56.1 Statement in Support of Their Motion for Summary Judgment ("Pl. 56.1") (Dkt. 62), Defendants' Rule 56.1 Statement of Material Undisputed Facts ("Def. 56.1") (Dkt. 88), Defendants' Responses and Objections to Plaintiffs' Statement Pursuant to Local Rule 56.1 ("Def. 56.1 Resp.") (Dkt. 89), and Plaintiffs' Response to Defendants' Rule 56.1 Statement ("Pl. 56.1 Resp.") (Dkt. 93). Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by any conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)–(d).

[3] Under the Rules of the City of New York, a "for-hire vehicle" is defined as "a motor Vehicle licensed by the Commission to carry Passengers for-hire in the City," which: (1) "[h]as a seating capacity of 20 or fewer Passengers"; (2) "[h]as three or more doors"; and (3) "[i]s not a Taxicab, a Commuter Van, or an authorized bus as defined by NYS law." 35 R.C.N.Y. § 51–03.

[4] Under § 19–506(b)(2), which the parties do not address in this case, it is unlawful for any person to "permit another to operate" or to "knowingly operate or offer to operate for hire any vehicle licensed" as a for-hire vehicle "in a manner that is beyond the scope of the activities permitted by such vehicle's license." N.Y.C. Admin. Code § 19–506(b)(2). A violation of § 19–506(b)(2), like a violation of § 19–506(b)(1), is punishable by a fine, a term of imprisonment, or both. *See id.*

violation of § 19–506(b)(1). *See id.* § 19–506(h)(1). Under § 19–506(h)(2), an owner's interest in an unlicensed vehicle for hire is "subject to forfeiture" if the owner has been convicted of or found liable for at least two violations of § 19–506(b)(1) within 36 months. *See id.* § 19–506(h)(2).

At least six TLC employees have provided testimony or declarations regarding the TLC's enforcement of these provisions. Four TLC inspectors have submitted declarations describing the procedures they follow when determining whether to seize a vehicle based on a suspected violation of § 19–506(b). *See* Decl. of Philip White ("White Decl.") (Dkt. 84); Decl. of Ronald Prioleau ("Prioleau Decl.") (Dkt. 85); Decl. of Sherif Issa ("Issa Decl.") (Dkt. 86); Decl. of Zbigniew Fimiarz ("Fimiarz Decl.") (Dkt. 87). Each of these inspectors states that, at the time of a vehicle stop, he obtains the driver's license and the vehicle owner's registration, then relays this information to an operator in a TLC radio room. According to these inspectors, the operator then enters this information into a New York State Department of Motor Vehicles ("DMV") database and a TLC database to determine whether the license and registration are valid and whether the driver and vehicle are licensed by the TLC. The inspectors explain that, if a vehicle is unlicensed, a search in the TLC database will yield a response of "no records" or "unlicensed entity." A "no records" response means that "the vehicle owner never previously received a summons" under § 19–506(b)(1). An "unlicensed entity" response, on the other hand, means that "the vehicle owner previously received a summons" under § 19–506(b)(1). Each inspector states that TLC radio room operators "routinely inform" him "whether the database search produced 'no records' or a record of an 'unlicensed entity.'"

According to Edwin Mulero, the Deputy Chief of Enforcement at the TLC, TLC inspectors do not consider whether a vehicle owner or driver has been cited for a prior violation of § 19–506

in determining whether to seize her vehicle. Specifically, Mulero provided the following deposition testimony:

> Q: Now [at the time of a vehicle seizure], would the TLC inspector learn whether or not that vehicle or that driver had previously been cited for a violation of Section 19–506?
>
> A: We don't look. We don't get the history on the – at that car stop, we don't get the history if that vehicle's been seized before or not.
>
> Q: Does there come a time later in the process when you do get that information?
>
> A: Normally, there's what they call a 900 number that's generated. And if that comes up that vehicle has been seized before. But that does not play into any decision if that vehicle's going to be seized or not.

Decl. of Andrew M. St. Laurent ("St. Laurent Decl.") Ex. 3 at 77:6–20 (Dkt. 61).

Finally, Rafeael Torres, a lieutenant in the Uniformed Services Bureau at the TLC, has submitted a declaration regarding his experience in the TLC radio room, where he has been assigned on "numerous occasions" to provide field inspectors with information on vehicle owners and drivers from the TLC and DMV databases. *See* Reply Decl. of Rafael Torres ("Torres Reply Decl.") ¶ 1 (Dkt. 97). Torres states that records in the TLC database, to which he "and all others who operate the radio room have access," include "the summons history for each entity, licensed or unlicensed," including "the date the entity was summonsed, the disposition of the summons, and any fines paid on the summons." *Id.* ¶ 7.

### 2. Post-Seizure Hearings

When a vehicle is seized for suspected unlicensed activity, a hearing must be held within five business days before the Taxi and Limousine Tribunal at the City's Office of Administrative Trials and Hearings ("OATH"). *See* 35 R.C.N.Y. § 68–17(c)(1). At the hearing, "a determination will be made" with respect to the following issues:

(A) Whether the Owner engaged in the Unlicensed Activity alleged in the summons[;]

(B) If the Owner is found to have engaged in such Unlicensed Activity, then:

(i) Whether the Owner has two or more violations of §§ 19–506(b), (c), or (k) of the Administrative Code in the past 36 months . . .; and

(ii) Whether it is necessary that the vehicle remain impounded pending a judgment of forfeiture.

*Id.*

If the vehicle owner is found not guilty at the hearing, her vehicle will be released. *See id.* § 68–17(d)(1). If, however, the TLC tribunal finds the vehicle owner guilty and determines that the vehicle is subject to forfeiture on the basis of the owner's prior violations, the TLC "will retain the vehicle and commence a forfeiture action." *Id.* § 68–17(d)(2)(A).[5]

Between September 8, 2011 and May 24, 2016, the City did not initiate any forfeiture proceedings under § 19–506(h)(2). *See* St. Laurent Decl. Ex. 4. On October 27, 2016, Mulero testified that, to his knowledge, the TLC had never sought forfeiture of a vehicle that was seized on the basis of a § 19–506 violation. *See* St. Laurent Decl. Ex. 3 at 124:10–14. On April 24, 2017—as the parties were briefing their respective motions for summary judgment in this case— the City filed a forfeiture complaint against a non-party defendant. *See* Compl., *City of New York v. Harris*, No. 451060/2017 (N.Y. Sup. Ct. Apr. 24, 2017).

**B. *Harrell v. City of New York***

This Court is not the first to consider constitutional challenges to the City's warrantless seizure of vehicles based on suspected violations of § 19–506(b)(1). In *Harrell v. City of New York*, which is currently pending before the Hon. Valerie Caproni, a putative class of individuals

_____

[5] If the vehicle owner is found guilty but her vehicle is not subject to forfeiture, the TLC will release the vehicle "upon payment of applicable penalties." 35 R.C.N.Y. § 68–17(d)(2)(B).

and entities "whose vehicles have been seized by the TLC based on allegations of first-time violations" of § 19–506 claim that the City's alleged seizures of their vehicles violate the Fourth and Fourteenth Amendments. Am. Compl. ¶ 94, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Nov. 13, 2014) (Dkt. 24) ("*Harrell* Am. Compl.").[6]

On September 30, 2015, Judge Caproni granted the *Harrell* plaintiffs summary judgment against the City on their Fourth and Fourteenth Amendment claims. *See Harrell v. City of New York*, 138 F. Supp. 3d 479, 484 (S.D.N.Y. 2015). Judge Caproni held that "the City's procedure of seizing vehicles that are suspected of being used for hire without proper licensing is unconstitutional under the Fourth and Fourteenth Amendments as it applies to vehicle owners with no prior violations in the preceding 36 months." *Id.* In ruling that the City's procedure violates the Fourth Amendment, Judge Caproni rejected the City's arguments that either the "instrumentality of crime" or "exigent circumstances" exceptions to the Fourth Amendment's warrant requirement justified the failure to obtain warrants before seizing the plaintiffs' vehicles. *See id.* at 489–92. In Judge Caproni's view, the City's argument that it could seize vehicles as contraband or as instrumentalities of crime "simply does not fly" because, unlike child pornography, "[s]traight tag for-hire vehicles are simply not contraband," and because the City "never intend[ed] to criminally prosecute" the alleged violations of § 19–506(b)(1). *Id.* at 490. The exigent circumstances exception did not apply, Judge Caproni reasoned, because the City's "intent" when seizing the vehicles was "to return them to their owner upon payment of the bond or penalty"—not, as the City had claimed, to protect the public from unsafe or inadequately insured

---

[6] At oral argument on their motion for summary judgment, the *Harrell* plaintiffs indicated that they sought relief only on behalf of individuals with "straight plates," that is, individuals whose seized vehicles did not bear TLC license plates. *See* Tr. of Oral Arg. at 6:19–20, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Sept. 24, 2015) (Dkt. 55) ("*Harrell* Oral Arg. Tr.") ("If we're defining the class, it would only be for straight-plate drivers.").

vehicles. *Id.* at 491. In resolving the Fourth Amendment question presented, however, Judge Caproni was careful to note that *Harrell* did *not* involve the question of whether the City could, consistent with the Fourth Amendment, seize a vehicle without a warrant based on "probable cause to believe that the vehicle to be seized is subject to civil forfeiture." *Id.* at 487.

Judge Caproni then determined that the City's procedure for seizing vehicles, as applied to vehicle owners with no violations of § 19–506(b) in the 36 months before their vehicles were seized, violates the Due Process Clause of the Fourteenth Amendment. *See id.* at 492. In reaching this conclusion, Judge Caproni first stated that, because the seizures of vehicles belonging to first-time violators "are unconstitutional under the Fourth Amendment," the initial seizure of a vehicle without notice or an opportunity to be heard violates the Due Process Clause as well. *Id.* at 493. Turning to the City's post-seizure procedures, Judge Caproni applied the familiar balancing test of *Matthews v. Eldridge*, 424 U.S. 319 (1976), and concluded that an individual's private interest in the "possession of [her] vehicle" outweighed the City's interest in "ensur[ing] payment of a fine." *Id.* at 493–94. Judge Caproni specified, however, that her ruling did not address whether vehicles subject to forfeiture could, consistent with due process, be seized without a prior hearing. Specifically, Judge Caproni noted that police departments have an interest in "preventing vehicles 'from being sold or destroyed before a court can render judgment in future forfeiture proceedings,'" but found this justification for seizures inapplicable because the TLC "does not forfeit vehicles of first-time offenders." *Id.* at 494 (quoting *Krimstock v. Kelly*, 306 F.3d 40, 64 (2d Cir. 2002)). After concluding that the City's "official, codified municipal policy" violated the Fourth and Fourteenth Amendments, Judge Caproni held that the City was liable under *Monell v.*

*Department of Social Services of the City of New York*, 436 U.S. 658 (1978), "for whatever damages Plaintiffs who were first time violators can prove." *Id.* at 495.[7]

On December 18, 2015, Judge Caproni granted in part and denied in part the City's motion to reconsider her summary judgment decision. *See Harrell v. Joshi*, 2015 WL 9275683, at *1 (S.D.N.Y. Dec. 18, 2015). In resolving the City's motion for reconsideration, Judge Caproni reiterated that, as she had previously held, "the City's policy of seizing the vehicles of first time violators" was unconstitutional. *Id.* at *2. Judge Caproni also rejected the City's argument that her prior decision was erroneous because it did not "address the individual circumstances and evidence surrounding each plaintiff's vehicle seizure," which she viewed as a challenge to her "determination that [she] could defer the adjudication of individual claims in this putative class action and decide only the legal issue presented." *Id.* Judge Caproni did, however, conclude that two individual plaintiffs, Susan Calvo and John Peters Limousines, were not entitled to summary judgment based on "evidence that they were not first time violators when the complained of seizures occurred." *Id.* at *4.[8] On reconsideration, therefore, Judge Caproni denied the plaintiffs' cross-motion for summary judgment as to Calvo and John Peters Limousines but granted the motion as to all other plaintiffs. *See id.*

After resolving the motion for reconsideration, Judge Caproni granted plaintiffs' request for leave to amend their complaint, but denied their request "to add claims on behalf of second or subsequent violators" of § 19–506. Order, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Feb. 9, 2016) (Dkt. 80). In a conference addressing plaintiffs' request for leave to amend, Judge Caproni stated that "a claim for subsequent seizures of vehicles" would constitute "a whole

---

[7] Judge Caproni dismissed the claims against individual defendants, finding that the plaintiffs had alleged no facts that these defendants were personally involved in the alleged constitutional violations. *See Harrell*, 138 F. Supp. 3d at 495–96.

[8] Susan Calvo is a named plaintiff in both *Harrell* and in this case.

different case" and that "[t]here are different issues than are involved in the case you've got in front of me." Tr. of Feb. 8, 2016 Conf. at 2:7–12, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Mar. 8, 2016) (Dkt. 91). Judge Caproni also denied the plaintiffs' request to add Angel DeCastro, who "was driving a vehicle that was licensed by the Taxi and Limousine Commission as a car for hire," as a named plaintiff. *See* Order at 1, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Mar. 31, 2016) (Dkt. 96). Judge Caproni explained that "[t]his case was brought on the theory that straight tag vehicles were being improperly seized; it is too late in the case to alter the fundamental premise of the case." *Id.* at 2 (internal citation omitted).[9]

## C. The *DeCastro* Plaintiffs

Against this backdrop, Calvo, DeCastro, and Macon filed a complaint in this action on May 24, 2016. *See* Compl. (Dkt. 7). According to the Amended Complaint, which is now the operative complaint in this action, "[t]his action is based on substantially the same legal theories alleged in *Harrell*." Am. Compl. ¶ 9 (Dkt. 27). As in *Harrell*, the Plaintiffs in this case claim that the City's warrantless seizure of vehicles they owned or operated violates the Fourth and Fourteenth Amendments. *See id.* ¶¶ 128–37, 145–54.[10] There are, however, two principal differences between the Plaintiffs in this case and those in *Harrell*: (1) the named Plaintiffs here include "second or subsequent violators" of § 19–506, and (2) the named Plaintiffs include one individual who operated a "TLC-licensed vehicle," rather than a "straight-plate" vehicle. *See id.* ¶¶ 9, 11.

---

[9] The plaintiffs thereafter filed a motion for class certification, which Judge Caproni denied without prejudice on September 21, 2017. *See* Op. & Order, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Sept. 21, 2017) (Dkt. 223).

[10] Plaintiffs also assert a claim for a violation of Article I, Section 12 of the New York Constitution, which is identical to their Fourth Amendment claim for purposes of this opinion, *see* Am. Compl. ¶¶ 138–44, and for a violation of the New York City Administrative Procedure Act, *see id.* ¶¶ 161–64. Although the Amended Complaint asserts two causes of action under the Due Process Clause of the Fourteenth Amendment, *see id.* ¶¶ 145–60, Plaintiffs clarified at oral argument that they assert a claim only for procedural due process, not substantive due process, *see* Tr. of Oral Arg. at 4:12–14.

It is undisputed that, between November 2013 and May 2015, TLC inspectors seized vehicles owned or operated by each Plaintiff without a warrant. The Court recounts the details of each of these seizures below.

### 1. Susan Calvo

On three occasions between November 2013 and March 2015, TLC inspectors seized a 2010 GMC Suburban owned by Susan Calvo and bearing the license plate "SSVIP." In the 36 months before this period began, Calvo had been found liable for at least two violations of § 19–506(b)(1). *See* Def. 56.1 ¶¶ 28, 30, 38; Decl. of Karen B. Selvin ("Selvin Decl.") Exs. H, I (Dkt. 82).

On November 27, 2013, TLC Inspectors Sherif Issa and Thomas Ryan seized Calvo's vehicle, which was being driven by Rafael Castillo-Jiminez, at the John F. Kennedy International Airport ("JFK Airport") in Queens, New York. *See* Def. 56.1 ¶ 33; Pl. 56.1 ¶ 27. According to the inspectors' notes, Castillo-Jiminez arrived at the airport with a passenger seated in the rear of the vehicle. *See* Def. 56.1 ¶ 34; Issa Decl. Ex. A. After exiting the vehicle, the passenger told the inspectors that the vehicle "was a car service arranged and paid for by her boyfriend," and that the vehicle "had picked her up at the W Hotel." Def. 56.1 ¶ 34; Issa Decl. Ex. A. The inspectors noted that the vehicle "is not duly licensed to operate for hire point-to-point in NYC," and that the vehicle owner had "allowed [the] vehicle to be used for illegal [for-hire-vehicle] activity." Issa Decl. Ex. A. The inspectors' notes further indicate that Castillo-Jiminez stated that he "works for the owner who dispatched him for the trip." *Id.* The inspectors issued Calvo a summons, which indicated that a hearing would be held on December 4, 2013. *See id.* Later that day, Calvo, acting through Castillo-Jiminez as her representative, pled guilty to a violation of § 19–506, paid a $600 fine, and received a vehicle release form. *See* Def. 56.1 ¶ 37; Pl. 56.1 ¶ 28; Selvin Decl. Ex. G.

10

On June 4, 2014, TLC Inspector Philip White seized the same vehicle, this time driven by Calvo herself, at the JFK Airport. *See* Def. 56.1 ¶ 40; Pl. 56.1 ¶ 31; White Decl. Ex. A. According to White's notes, two passengers exited the vehicle at the airport and told him that they had "ordered this vehicle online," paid for the ride with a credit card, and were picked up in Manhattan. White Decl. Ex. A. White issued Calvo four summonses, including one for a violation of § 19–506(b)(1), which indicated that a hearing was scheduled for June 17, 2014. *See* Def. 56.1 ¶¶ 43–44; White Decl. ¶ 4, Ex. A. Calvo posted a $2,000 bond and received a vehicle release form. *See* Def. 56.1 ¶ 48; Pl. 56.1 ¶ 32; Selvin Decl. Ex. K. According to Plaintiffs, the case against Calvo was "ultimately resolved," and her $2,000 bond was returned. *See* Pl. 56.1 ¶ 33.

On March 16, 2015, TLC Inspector Zbigniew Fimiarz seized the same vehicle, driven this time by Susan Calvo's son, Jason Calvo, at the JFK Airport. *See* Def. 56.1 ¶ 49; Pl. 56.1 ¶ 35; Fimiarz Decl. ¶ 4, Ex. A. According to his notes, Fimiarz observed two passengers seated in the rear of the vehicle exit outside the airport. *See* Def. 56.1 ¶ 54; Fimiarz Decl. Ex. A. Fimiarz noted that the passengers told him the vehicle was a "car service," which picked them up at the St. Regis Hotel in Manhattan. Fimiarz Decl. Ex. A. Fimiarz further noted that the "vehicle is not duly licensed to be operated for hire." *Id.* Fimiarz issued Jason Calvo six criminal summonses, including one for a violation of § 19–506(b)(1), which indicated that a hearing was scheduled for March 24, 2015. *See* Def. 56.1 ¶ 51; Fimiarz Decl. Ex. B. The next day, Susan or Jason Calvo posted a $2,000 bond and received a vehicle release form. *See* Def. 56.1 ¶ 58; Pl. 56.1 ¶ 36; Selvin Decl. Ex. M. The charges were "resolved" at a hearing, and the bond was returned. *See* Pl. 56.1 ¶ 36.

### 2. Kelly Macon

On December 8, 2014, TLC Inspectors Taufiq Ahasan and Ronald Prioleau seized a 2003 Lincoln Towncar owned and operated by Kelly Macon in Brooklyn. *See* Def. 56.1 ¶ 68; Pl. 56.1 ¶ 38; Prioleau Decl. ¶ 4, Ex. A. According to their notes, the inspectors observed Macon pick up a passenger, who entered the rear of the vehicle. *See* Def. 56.1 ¶ 69; Prioleau Decl. Ex. A. When the vehicle had stopped,[11] the passenger told the inspectors that he had agreed to pay Macon $8 for a ride to a shopping mall. *See* Def. 56.1 ¶ 70; Prioleau Decl. Ex. A. At the time of this incident, Macon had been found liable for violating § 19–506(b)(1) within the past 36 months, as he had pled guilty to another violation on July 29, 2014. *See* Def. 56.1 ¶ 67; Selvin Decl. Ex. N. The officers issued Macon a summons, which indicated that a hearing was scheduled for December 17, 2014. *See* Prioleau Decl. Ex. A. On December 8, 2014, Macon pled guilty, paid a $950 fine, and received a vehicle release form. *See* Def. 56.1 ¶¶ 76, 78; Pl. 56.1 ¶ 39; Selvin Decl. Ex. O.

### 3. Angel DeCastro

On May 28, 2015, a TLC inspector seized a 2012 Toyota Camry operated by Angel DeCastro in Manhattan. *See* Def. 56.1 ¶ 10; Selvin Decl. Ex. A; Selvin Decl. Ex. D at 43:11:12. The vehicle bore "T&LC" license plates. *See* Def. 56.1 ¶¶ 13, 15; Selvin Decl. Ex. D at 41:4–6. The inspector reported observing DeCastro driving the vehicle with two passengers seated in the rear of the vehicle, one of whom was holding money. *See* Selvin Decl. Ex. A. According to the inspector's notes, DeCastro and the passengers "confirmed fhv activity"[12] when the vehicle stopped, explaining that the ride was "arranged via preferred care transportation" and that the fare was to be paid by an insurance company. *See* Selvin Decl. Ex. A. The inspector further noted that

---

[11] The inspectors' notes appear to indicate that they pulled Macon over after he failed to signal for a left turn. *See* Prioleau Decl. Ex. A.

[12] There is no dispute that "fhv" refers to "for-hire vehicle."

DeCastro "started yelling, screaming, and was extremely disorderly," stated that "the NYC TLC is a mafia agency," and gave the inspector "the middle finger." Selvin Decl. Ex. A. The following day, DeCastro pled guilty to a violation of § 19–506, agreed to pay a $750 fine, and received a vehicle release form. *See* Def. 56.1 ¶ 20; Selvin Decl. Ex. C.

### D. Procedural History

On February 3, 2017, Plaintiffs filed a motion for summary judgment. *See* Pl. Mot. for Summ. J. (Dkt. 59). On May 8, 2017, Defendants filed a cross-motion for summary judgment. *See* Def. Cross-Mot. for Summ J. (Dkt. 77). On June 5, 2017, Plaintiffs filed a reply in support of their motion for summary judgment and in opposition to Defendants' motion. *See* Pl. Reply Mem. (Dkt. 92). On June 19, 2017, the City filed a reply in further support of their cross-motion for summary judgment. *See* Def. Reply Mem. (Dkt. 95). On September 6, 2017, the Court held oral argument.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, i.e., it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (internal citations and quotation marks omitted). "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely

rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 54 (2d Cir. 2017) (alterations omitted) (quoting *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). In considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## DISCUSSION

### A. Issue Preclusion

The outcome of the parties' motions in this case turns, in part, on the preclusive effects of Judge Caproni's decisions in *Harrell*. Invoking the doctrine of issue preclusion, or collateral estoppel, Plaintiffs argue that the City is barred from litigating several issues that were decided in *Harrell*. *See, e.g.*, Pl. Mem. at 18–19; Pl. Reply Mem. at 2–4. The Court agrees.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). "Collateral estoppel saves parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results, forwards public policy favoring the establishment of certainty in legal relations." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (citation

omitted); *see also Envtl. Def. v. EPA*, 369 F.3d 193, 202 (2d Cir. 2004) ("The doctrine serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

Issue preclusion "bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citation omitted). For purposes of issue or claim preclusion, summary judgment is considered a decision on the merits. *See, e.g.*, *Ranasinghe v. Kennell*, No. 16-CV-2170 (JMF), 2017 WL 384357, at *4 (S.D.N.Y. Jan. 25, 2017); *Smith v. City of New York*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016) (summary order); *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010); 18 James W. Moore et al., *Moore's Federal Practice* § 132.03 (3d ed. 2015) ("Issue preclusion generally applies when the prior determination is based on a motion for summary judgment."); *see generally Alcan Aluminum Corp.*, 990 F.2d at 719 ("We have taken a broad view of the application of collateral estoppel to rulings made at an interim stage of litigation. Estoppel is applied when 'the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961))).[13]

---

[13] The City and the TLC do not argue that they are, as a general matter, shielded from the doctrine of nonmutual offensive collateral estoppel. In *United States v. Mendoza*, 464 U.S. 154 (1984), which neither party has cited here, the Supreme Court held that this doctrine does not apply against the federal government. *See id.* at 158. In reaching this conclusion, the Court noted that the federal government litigates issues of "substantial public importance" on a "nationwide basis," and that a rule permitting the use of nonmutual offensive collateral estoppel against the federal government would deprive the Court of "the benefit it receives from permitting several courts of appeals to explore a difficult question before [it] grants certiorari." *Id.* at 159–60. Courts are split on the question of whether *Mendoza* prohibits the use of

Three issues raised in this case were decided in *Harrell*. First, Judge Caproni decided whether the seizure of a vehicle on the basis of a suspected violation of § 19–506(b)(1) falls within the so-called "instrumentality of crime" exception to the Fourth Amendment's warrant requirement. *See* Defs.' Mem. in Supp. of Cross-Mot. for Summ J. ("Defs. Mem.") at 11–15, 19–20, 21–22 (Dkt. 81); *see generally Horton v. California*, 496 U.S. 128, 136–37 (1990); 3 Wayne R. LaFave, *Search & Seizure* § 7.3(a) (5th ed.). The "identical issue" was raised in *Harrell*: in that case, the City argued, as it does here, that TLC inspectors could seize vehicles without a warrant based on probable cause to believe that the vehicles were "instrumentalities" used in the "crime" of operating or allowing another to operate a vehicle for hire without proper licensing. *See* Defs. Reply Mem. in Supp. of Mot. to Dismiss & in Opp'n to Cross-Mot. for Summ J. at 3–7, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Feb. 19, 2015) (Dkt. 41) ("Defs. *Harrell* Summ J. Mem."); *Harrell* Oral Arg. Tr. at 15:10–16. This issue was actually litigated and decided: in entering summary judgment against the City, Judge Caproni specifically rejected the City's argument that its "seizures pursuant to § 19–506(b)(1) do not violate the Fourth Amendment because they are reasonable and fall within an exception to the warrant requirement," including

nonmutual offensive collateral estoppel against state or municipal governments. *Compare, e.g.*, *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 714 (9th Cir. 2005) (holding that *Mendoza* applies in a suit against a state agency), *and Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1579 (11th Cir. 1985) (same), *with Milton S. Kronheim & Co. v. District of Columbia*, 91 F.3d 193, 209 n.4 (D.C. Cir. 1996) (declining to extend *Mendoza*'s rule against nonmutual offensive collateral estoppel to an action against the District of Columbia), *In re Stevenson*, 40 A.3d 1212, 1222 n.8 (Pa. 2012) (declining to extend "the *Mendoza* doctrine" to state governments), *and State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 951 (Alaska 1995) (declining to extend *Mendoza* to a suit against a state government). The Second Circuit has not extended *Mendoza* to suits involving state or local governments. *See Benjamin v. Coughlin*, 905 F.2d 571, 576 (2d Cir. 1990) (distinguishing *Mendoza* and permitting the use of nonmutual collateral estoppel against a state agency). In the absence of any argument from the parties or Second Circuit authority to the contrary, the Court assumes that Plaintiffs may invoke the doctrine of nonmutual offensive collateral estoppel against the City and the TLC.

the "instrumentalities of crime" exception. *Harrell*, 138 F. Supp. 3d at 489.[14] The City had a full

and fair opportunity to litigate the issue: the City advanced its "instrumentalities of crime"

argument throughout its briefing and at oral argument before Judge Caproni. Finally, the

resolution of this issue was necessary to support the decision on the merits: Judge Caproni held

that "the City's procedure of seizing vehicles that are suspected of being used for hire without

proper licensing is unconstitutional" under the Fourth Amendment because no exception to the

warrant requirement, including the "instrumentalities of crime" exception, applied. *Id.* at 483.

Therefore, under the doctrine of issue preclusion, the City is barred from relitigating whether the

"instrumentality of crime" exception to the Fourth Amendment's warrant requirement applies to

the warrantless seizure of vehicles based on suspected violations of § 19–506(b)(1).

The City argues that the "instrumentality of crime" issue in this case is not identical to the

issue raised in *Harrell* because the named Plaintiffs in this case differ in two respects from those

in *Harrell*. *See* Defs. Mem. at 13. First, unlike in *Harrell*, some Plaintiffs in this case—Susan

Calvo and Kelly Macon—had been found liable for at least one prior violation of § 19–506(b)(1)

within the 36 months prior to the seizure of their vehicles. *See id.* at 13. This distinction, while

relevant in analyzing other preclusion questions in this case, is not material to the issue of whether

the "instrumentality of crime" exception applies. In both cases, the "crime" for which Plaintiffs'

vehicles could be viewed as "instrumentalities" is the same: the Plaintiffs in this case, like those

in *Harrell*, were suspected of violating § 19–506(b)(1). The City is also correct that this case,

unlike *Harrell*, involves one Plaintiff—Angel DeCastro—whose vehicle bore TLC licensing

plates at the time that it was seized. As the City has presented its "instrumentality of crime"

---

[14] Although this passage in *Harrell* indicates that the seizures were made "pursuant to § 19–506(b)(1)," 138 F. Supp. 3d at 489, it appears that *Harrell* intended to reference seizures made pursuant to § 19–506(*h*)(1), on the basis of suspected violations of § 19–506(b)(1).

argument in this case, however, this distinction is also immaterial: in both cases, the City has argued that a vehicle—whatever its license plates may read—may be seized without a warrant as an instrumentality used in violating § 19–506(b)(1). *Compare, e.g.*, Defs. Mem. at 12, *with* Defs. *Harrell* Summ J. Mem. at 5. In claiming that the "instrumentality of crime" exception applies to the warrantless seizure of DeCastro's vehicle, the City has not argued that DeCastro's alleged use of TLC license plates should play any role in determining whether the officers could, consistent with the Fourth Amendment, seize his vehicle without a warrant.[15] Thus, despite the distinctions between the Plaintiffs in this case and those in *Harrell*, the issue of whether the "instrumentality of crime" exception applies to the warrantless seizure of vehicles in this case is identical to the issue decided in *Harrell*. *See, e.g.*, *Benjamin v. Coughlin*, 905 F.2d 571, 575–76 (2d Cir. 1990) (holding that a state department of corrections was precluded from relitigating the validity of a directive that was found invalid in a prior § 1983 action, despite the state's argument that the prior decision only addressed directive's applicability to a different group of individuals, where the state asserted the same interests in defense of the directive); *cf. Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 289–90, 293 (2d Cir. 2000) (holding that a municipal department of corrections was barred, under the doctrine of claim preclusion, from litigating the validity of a policy that was previously found unlawful and noting that "the mere assertion of new incidents

---

[15] Notably, the City argues that DeCastro's vehicle was seized on the basis of a suspected violation of § 19–506(b)(1)—the same crime for which it claims that all other Plaintiffs' vehicles were used as "instrumentalities" in both this case and in *Harrell*. *Compare, e.g.*, Defs. Mem. at 12, *and* Def. 56.1 ¶ 10, *with* Defs. *Harrell* Summ. J. Mem. at 5 & n.6. The City has *not* argued that DeCastro's vehicle was seized on the basis of a suspected violation of § 19–506(b)(2), which prohibits any person from operating or allowing another to operate a vehicle for hire "in a manner that is beyond the scope of the activities permitted by such vehicle's license." N.Y.C. Admin. Code § 19–506(b)(2); *see* Defs. Mem. at 12 n.12 (rejecting Plaintiffs' allegation that the City seized DeCastro's vehicle on the grounds that DeCastro was "acting beyond the scope of [his] license"). Accordingly, this case does not present the question of whether TLC inspectors could seize a vehicle without a warrant as an "instrumentality of crime" used in the violation of § 19–506(b)(2).

arising from the application of the challenged policy is insufficient to bar the application of *res judicata*"); *Maneely v. City of Newburgh*, 256 F. Supp. 2d 204, 209–10 (S.D.N.Y. 2003) (concluding that the issue of whether a city's strip search policy for pre-arraignment detainees violated the Fourth Amendment was "precisely the issue" decided in a prior § 1983 action, despite factual differences between the searches at issue, but determining that the city did not have a full and fair opportunity to litigate the issue); *see generally* Joshua M. D. Segal, Note, *Rebalancing Fairness and Efficiency: The Offensive Use of Collateral Estoppel in § 1983 Actions*, 89 B.U. L. Rev. 1305 (2009).

Second, Judge Caproni decided whether the so-called "exigent circumstances" exception to the Fourth Amendment's warrant requirement applies to the warrantless seizure of a vehicle, where TLC inspectors allegedly suspect a violation of Section 19–506(b)(1). *See* Defs. Mem. at 16, 20, 22. The City raised the identical issue in *Harrell*, arguing that "exigent circumstances" necessitated the warrantless seizure of vehicles. *See* Defs. *Harrell* Summ J. Mem. at 7–9; *Harrell* Oral Arg Tr. at 19:11–16. Indeed, the City supported this argument with the same reasoning it provides here: in both cases, the City has pointed to the New York City Council's alleged determination that illegal for-hire vehicles pose an immediate threat to public welfare and safety as evidence of "exigent circumstances" that would necessitate an immediate seizure of a vehicle suspected of violating § 19–506(b)(1). *Compare, e.g.*, Defs. Mem. at 16, 20, 22, *with* Defs. *Harrell* Summ J. Mem. at 3–9, *and Harrell* Oral Arg. Tr. at 19:11–16. This issue was actually litigated and decided: Judge Caproni specifically rejected the City's argument that "exigent circumstances justify the seizures because the vehicles are inherently dangerous" or because "the seizures are justified to protect public safety." *Harrell*, 138 F. Supp. 3d at 489. The City had a full and fair opportunity to litigate the issue, advancing its "exigent circumstances" theory throughout the

proceedings before Judge Caproni. *See* Defs. *Harrell* Summ J. Mem. at 7–9; *Harrell* Oral Arg Tr. at 19:11–16. And like the "instrumentality of crime" issue, the applicability of the "exigent circumstances" exception to the warrant requirement was necessary to support Judge Caproni's decision on the merits: Judge Caproni determined that the City's warrantless seizure of vehicles on the basis of suspected violations of § 19–506(b)(1) violated the Fourth Amendment in part because "exigent circumstances" could not justify TLC inspectors' failure to obtain warrants before seizing vehicles. Accordingly, under the doctrine of issue preclusion, the City is barred from relitigating whether the warrantless seizure of a vehicle, on the basis of a suspected violation of § 19–506(b)(1), falls within the "exigent circumstances" exception to the Fourth Amendment's warrant requirement.[16]

Finally, Judge Caproni decided whether the seizure of vehicles belonging to "first-time violators" of § 19–506(b)(1), without a prior hearing, violates the Due Process Clause. *See* Defs. Mem. at 22–25.[17] In *Harrell*, the City raised the identical issue: the City argued that a pre-seizure

---

[16] The City claims that the seizures of vehicles belonging to Macon and DeCastro involved certain "exigencies" that were absent in *Harrell*. For example, the City points to Macon's criminal record and DeCastro's "disorderly" response to the TLC officer who seized his vehicle as distinctions between this case and *Harrell*. This argument is not persuasive: Judge Caproni ruled that concerns about public safety or perceived exigencies could not, as a matter of law, justify the City's failure to obtain a warrant before seizing vehicles pursuant to § 19-506(h)(1). Indeed, Judge Caproni's decision on the City's motion for reconsideration made plain that her award of summary judgment to plaintiffs did not rest on any analysis of "the individual circumstances and evidence surrounding each plaintiff's vehicle seizure," but rather on a determination that "the City's *policy*" was unconstitutional. *Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683, at *1–2 (emphasis added). And in a later ruling on attorney's fees, Judge Caproni stated that "the issue at summary judgment was whether the City's policy of seizing cars was unconstitutional; individual distinctions between the named plaintiffs were not material to the Court's decision at that time." Order, *Harrell v. City of New York*, No. 14-CV-7246 (VEC) (Sept. 15, 2017) (Dkt. 222). The "individual circumstances" related to the seizures of vehicles belonging to Macon and DeCastro do not, therefore, provide a basis for the City to avoid the preclusive effects of Judge Caproni's decision that the "exigent circumstances" exception does not apply to the warrantless seizure of vehicles pursuant to § 19–506(b)(1). In any event, the City has not provided an adequate basis for concluding that either Macon's criminal record or DeCastro's disorderly conduct presented any exigency that would justify the warrantless seizure of their vehicles.

[17] In this case, the City raises this issue only as to DeCastro, who had not been found liable for any violations of § 19–506(b)(1) in the 36 months before his vehicle was seized.

hearing was not required before the vehicles of first-time violators were seized because it afforded these individuals a "post-deprivation opportunity to be heard." *See* Defs. *Harrell* Summ J. Mem. at 9–13. At times using identical language as it does in this case, the City asserted that its "significant enforcement and public safety interests in immediately seizing an unlicensed for-hire vehicle," including a vehicle owned or operated by a first-time violator of § 19–506(b)(1), justified its failure to provide pre-seizure hearings. *Id.* at 9; Defs. Mem. at 23. This issue was also litigated and decided: Judge Caproni held that the City denies first-time violators due process by seizing their vehicles without first providing a hearing. *See Harrell*, 138 F. Supp. 3d at 492–95. The City had a full and fair opportunity to litigate this issue, as it advanced its view that Due Process did not require pre-seizure hearings throughout the *Harrell* proceedings, and Judge Caproni's decision on the issue was, of course, necessary to her determination that plaintiffs were entitled to summary judgment on their Due Process claim. Thus, the City is barred from relitigating whether its failure to provide a hearing before the seizing the vehicles belonging to first-time violators of § 19–506(b)(1) satisfies the procedural requirements of the Due Process Clause.[18]

As Judge Caproni carefully noted, however, *Harrell* did not address the constitutionality of the City's procedure for seizing vehicles belonging to individuals whose vehicles are subject to forfeiture under § 19–506(h)(2). Indeed, Judge Caproni explicitly stated *Harrell* did not involve the questions of whether inspectors had "probable cause to believe that the vehicle to be seized is subject to civil forfeiture" or whether the City could retain possession of vehicles "pending

---

[18] The Court expresses no view on the merits of Judge Caproni's decisions on the issues that the City attempts to relitigate in this case. *See Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) ("By foregoing the opportunity to reexamine an issue, a degree of certainty about the correctness of the prior result is sacrificed, that is to say, the bar of collateral estoppel carries with it the devastating danger that the first decision on an issue may have been wrong and will remain unremedied. Use of the doctrine represents an informed choice that the occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation." (citation omitted)).

forfeiture proceedings." *See* 138 F. Supp. 3d at 487.[19]  These questions, which *Harrell* did not

decide, take center stage here, as the City argues that the vehicles belonging to two of the named

Plaintiffs—Susan Calvo and Kelly Macon—were subject to forfeiture under § 19–506(h)(2).

Thus, the central issue in this case, unlike in *Harrell*, is whether the forfeiture provision of § 19–

506(h)(2) justifies the City's failure to obtain warrants or conduct hearings before seizing vehicles

owned or operated by individuals suspected of unlicensed activity.[20]

## B. Fourth Amendment

The Fourth Amendment protects the rights of individuals "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"A seizure occurs when the Government interferes in some meaningful way with the individual's

possession of property."  *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014); *accord United

States v. Jacobsen*, 466 U.S. 109, 113 (1984).  It is well established that warrantless searches or

seizures are presumptively unreasonable.  *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 459 (2011);

*United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017).  "Nevertheless, because the ultimate

touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to

certain exceptions."  *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Flippo v. West

Virginia*, 528 U.S. 11, 13 (1999) (per curiam)).

---

[19] In passing in its briefing and its presentation at oral argument in *Harrell*, the City noted that a vehicle belonging to Susan Calvo, who is also a named plaintiff in this case, was subject to forfeiture under § 19–506(h)(2) based on Calvo's prior violations of § 19–506(b)(1).  *See* Defs. *Harrell* Summ. J. Mem. at 16; *Harrell* Oral Arg. Tr. at 28:3–4, 28:17–22.  The City did not, however, clearly present this argument to Judge Caproni, who initially ruled on the motions without addressing the possible applicability of the forfeiture provision to the *Harrell* plaintiffs.

[20] The City's arguments in opposition to DeCastro's motion for summary judgment are entirely precluded.  The City argues that it did not violate DeCastro's Fourth Amendment rights because the seizure of his vehicle fell within the "instrumentality of crime" and "exigent circumstances" exceptions to the warrant requirement, *see* Defs. Mem. at 11–15, and that it did not deny DeCastro due process because, although DeCastro was a "first-time" violator of § 19–506(b)(1), a hearing was not required before his vehicle was seized, *see id.* at 22–25.  As discussed above, Judge Caproni decided all these issues against the City in *Harrell*.  Accordingly, DeCastro is entitled to summary judgment.

The relevant exception in this case is the so-called "forfeiture" exception, under which "law enforcement officers who have probable cause to believe an automobile is subject to forfeiture may both seize the vehicle from a public place and search it without a warrant." *United States v. Gaskin*, 364 F.3d 438, 458 (2d Cir. 2004) (citing *Florida v. White*, 526 U.S. 559, 561 (1999)); *see also, e.g.*, *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) ("When police have probable cause to believe that an automobile is forfeitable contraband, it may be seized from a public place without a warrant."); *United States v. Mendoza*, 438 F.3d 792, 796 (7th Cir. 2006) ("[T]he weight of authority holds that police may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe that the car is subject to forfeiture." (alterations and citation omitted)); *United States v. Brookins*, 345 F.3d 231, 235 (4th Cir. 2003) (holding that, under federal forfeiture statutes, "the police may seize an automobile without first obtaining a warrant when they have probable cause to believe that it is forfeitable contraband"); *Matos v. City of New York*, No. 11-CV-3107 (AJN), 2013 WL 425446, at *4 n.6 (S.D.N.Y. Feb. 1, 2013) ("[T]he warrantless seizure of a vehicle believed to be subject to forfeiture does not offend the Constitution."); *see generally* 3 Wayne R. LaFave, *Search & Seizure* § 7.3(b) (5th ed.). "To establish probable cause, the Government bears the burden of demonstrating that it had 'reasonable grounds to believe the property is subject to forfeiture, and that these grounds must rise above the level of mere suspicion.'" *Oyekoya v. United States*, 175 F. Supp. 2d 522, 524–25 (S.D.N.Y. 2001) (quoting *United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993)), *aff'd*, 28 F. App'x 82 (2d Cir. 2002) (summary order).

The City argues that TLC inspectors had probable cause to believe that the vehicles owned by Calvo and Macon were subject to forfeiture under § 19–506(h)(2), which makes a vehicle forfeitable if the owner has been convicted of or found liable for at least two violations of § 19–

506(b) within 36 months.  N.Y.C. Admin. Code § 19–506(h)(2); *see* Defs. Mem. at 17–19, 21.

This argument is not persuasive.  The City has provided no evidence that the TLC inspectors who effected the seizures at issue had any reasonable basis for believing that Calvo or Macon had been "convicted" of or "found liable" for any prior violations at the time of the seizures.  N.Y.C. Admin. Code § 19–506(h)(2).  None of the inspectors involved in these seizures claims that he had any specific information regarding the violation histories of these two individuals before seizing their vehicles.[21]  None of the inspectors states that he even investigated the prior violations, if any, of Calvo or Macon prior to the seizures at issue.  The summonses issued by these inspectors, while recounting details about the vehicles and the inspectors' communications with the drivers and passengers, do not mention the violation histories of either Calvo or Macon.  *See* White Decl. Ex. A; Prioleau Decl. Ex. A; Issa Decl. Ex. A; Fimiarz Decl. Ex. A.

To be sure, the inspectors' declarations indicate that, in the course of vehicle stops more generally, the inspectors determine whether the vehicle owner has "previously received a summons."  *See* White Decl. ¶¶ 5–6; Prioleau Decl. ¶¶ 5–6; Issa Decl. ¶¶ 5–6; Fimiarz Decl. ¶¶ 5–6.  Knowledge that an owner has received a "summons," however, does not provide a reasonable basis for concluding that she has been "convicted" of or "found liable" for violating § 19–506(b).  Under the City's rules, a "summons" refers only to an "*alleged* violation," not a conviction or finding of liability.  35 R.C.N.Y. § 68–06(a) (emphasis added); *see also Black's Law Dictionary* (10th ed. 2014) (defining a "summons" as a "writ or process commencing the plaintiff's action and requiring the defendant to appear and answer").  Moreover, under the undisputed facts of this case, a summons is not a reliable indicator of a conviction or a finding of liability: several of the

---

[21] Although four inspectors involved in these seizures have submitted declarations, none provides any specific information about the seizures at issue.  *See* White Decl.; Prioleau Decl.; Issa Decl.; Fimiarz Decl.  Rather, each declaration attaches a summons and verifies that the information contained in the summons is accurate.  *See* White Decl.; Prioleau Decl.; Issa Decl.; Fimiarz Decl.

summonses issued during the vehicle seizures at issue did not result in a conviction or finding of liability. *See* Pl. 56.1 ¶¶ 33, 36. Thus, knowledge that a driver or owner has previously received a summons provides inspectors too little information to infer that he or she has been convicted of or found liable for the violation alleged therein.

Indeed, in a variety of contexts, courts have recognized that a document initiating a criminal action, like a summons, fails to provide an adequate basis for ascertaining an individual's record of conviction. *See, e.g.*, *Shepard v. United States*, 544 U.S. 13, 21 (2005) (holding that a sentencing court may not look to charging documents to determine a defendant's record of conviction in prior cases); *United States v. Dantzler*, 771 F.3d 137, 146–47 (2d Cir. 2014) (holding that a district court plainly erred in relying on "arrest reports" to determine whether a defendant had been convicted of a prior offense for purposes of sentencing under the Armed Career Criminal Act). Likewise here, the fact that Calvo or Macon had received a summons in a prior case, without any further information about the case, does not provide TLC inspectors a reasonable basis for concluding that their vehicles are subject to forfeiture under § 19–506(h)(2).

In its reply brief, the City invokes the so-called "collective knowledge doctrine," arguing that TLC radio room operators' access to information regarding the "disposition of the summons" provides a basis for inferring that the TLC inspectors who seized Calvo's and Macon's vehicles knew whether their prior summonses had resulted in convictions or findings of liability. *See* Def. Reply Mem. at 7; Torres Reply Decl. ¶ 7. "The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all.'" *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (alteration omitted) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)); *accord Babilonia*, 854 F.3d at 178.

The Second Circuit has, however, "decline[d] to extend the collective knowledge doctrine to cases where . . . there is no evidence that an officer has communicated his suspicions with the officer conducting the search, even when the officers are working closely together at a scene." *United States v. Hussain*, 835 F.3d 307, 316 n.8 (2d Cir. 2016); *see also, e.g.*, *United States v. Massenburg*, 654 F.3d 480, 495 (4th Cir. 2011) ("Where officers working closely together have *not communicated* pertinent information, the acting officer weighs the costs and benefits of performing the search in total ignorance of the existence of that information—it is not known to her, so it cannot enter into the calculus." (emphasis in original)); *United States v. Edwards*, 885 F.2d 377, 382 (7th Cir. 1989) ("A supervising officer's knowledge about a defendant cannot be relied upon to provide probable cause for his arrest where there is no evidence that such knowledge was communicated to the agents on the scene who actually made or ordered the defendant's arrest."); *see generally* 3 Wayne R. LaFave, *Search & Seizure* § 3.5(c) (5th ed.). In this case, while TLC radio room operators may have had access to information concerning the disposition of summonses against Calvo or Macon, there is no evidence that any operator conveyed this information to the inspectors who seized their vehicles. Accordingly, the collective knowledge doctrine provides no basis for inferring that the inspectors who seized vehicles belonging to Calvo or Macon had knowledge that they had been convicted or found liable for any prior violations of § 19–506(b)(1). *See Hussain*, 835 F.3d at 316 n.8; *see also, e.g.*, *United States v. Colon*, 250 F.3d 130, 137 (2d Cir. 2001) (finding that a 911 operator's knowledge could not be imputed to dispatching or arresting officers in determining whether the officers had reasonable suspicion to conduct a search, where the operator did not convey this knowledge to the officers); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 660–61 (E.D.N.Y. 2017) (concluding that, under *Hussain*, the collective knowledge doctrine was inapplicable, where arresting officers' knowledge about a plaintiff's arguable crimes "was not

communicated" to two other officers accused of false arrest); *United States v. Peterson*, No. 12-CR-409 (PAE), 2012 WL 4473298, at *8 (S.D.N.Y. Sept. 28, 2012) (finding that information provided to 911 operator could not be imputed to arresting officers, where the operator did not communicate this information to the officers, as "only the information conveyed to [the officers] counts for purposes of determining reasonable suspicion"), *aff'd*, 559 F. App'x 92 (2d Cir. 2014) (summary order); *Hickey v. City of New York*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *8 (S.D.N.Y. Nov. 29, 2004) ("[T]he evaluation of probable cause must depend solely on the information relayed by the operators and dispatcher to the arresting officers themselves.").

Because Plaintiffs bring this action against a municipality, they must show not only a violation of their constitutional rights but also "the existence of a municipal policy or practice that caused the alleged constitutional violation" to prevail. *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978)). Plaintiffs have satisfied this burden. The TLC's Deputy Chief of Enforcement, Edwin Mulero, testified at his deposition that the inspectors "don't look" at "whether or not [a] vehicle or [a] driver has been cited for a violation of Section 19–506" when seizing vehicles. St. Laurent Decl. Ex. 3 at 77:6–13. Though Mulero acknowledged that inspectors could call a "900 number" to determine "whether that vehicle has been seized before," he unequivocally stated that this information "does not play into any decision if that vehicle's going to be seized or not." *Id.* at 77:16–20. The City has provided no contrary evidence of its policy: the undisputed evidence shows that TLC inspectors do not have probable cause to believe a vehicle is subject to forfeiture under § 19–506(h)(2) when they seize vehicles for suspected violations of § 19–506(b)(1). Accordingly, Plaintiffs are entitled to summary judgment against the City on their Fourth Amendment claim.

## C. Due Process

Plaintiffs next claim that the City's procedure for seizing vehicles subject to forfeiture pursuant to § 19–506(h)(2) violates the Due Process Clause of the Fourteenth Amendment. The Court disagrees.

The Fourteenth Amendment provides that "No state shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV. "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).[22] "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

In this case, Plaintiffs argue that the City denied them due process by failing to conduct a hearing prior to seizing their vehicles. *See* Pls. Mem. at 17–19. Plaintiffs are correct that "'the root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). While "[t]he 'general rule' is that a pre-deprivation hearing is required," however, "the *Mathews* inquiry 'provides guidance in determining whether to tolerate an exception to the rule requiring pre-deprivation notice and hearing.'" *Nnebe*, 644 F.3d at 158 (citation and

---

[22] The parties do not dispute that a property interest is implicated in this case.

some internal quotation marks omitted) (quoting *Krimstock v. Kelly*, 306 F.3d 40, 60 (2d Cir. 2002)). Thus, "[d]ue process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as 'some form of hearing is provided before an individual is finally deprived of the property interest.'" *Id.* (alterations omitted) (emphasis in original) (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)); *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter.").

In a series of cases beginning with *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) (*Krimstock I*), the Second Circuit has addressed the requirements of procedural due process when the government seizes vehicles and retains possession of them pursuant to civil forfeiture statutes. In *Krimstock I*, the Second Circuit considered the constitutionality of a civil forfeiture statute, pursuant to which the City of New York seized the vehicles of individuals "accused of driving while intoxicated or of committing other crimes for which a motor vehicle could be considered an instrumentality" and retained them for "months or sometimes years," without a hearing before a neutral fact-finder, pending the "ultimate resolution of the forfeiture action in court." *Id.* at 43, 48. Applying *Matthews v. Eldridge*, the Second Circuit balanced the individual's interest in possessing her vehicle against the government's interest in "prevent[ing] a vehicle from being sold or destroyed before a court can render judgment in future forfeiture proceedings." *Krimstock I*, 306 F.3d at 64. The Second Circuit held that the forfeiture law was "constitutionally infirm" because it did not afford vehicle owners a "prompt post-seizure hearing to test probable cause for the vehicle's seizure." *Id.* at 45, 48. While the Second Circuit left the task of determining what this hearing should entail to "the district court, in consultation with the parties," it noted that "the

hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure," and that "the retention hearing [should] allow the [neutral magistrate] to consider whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the City's interest in the allegedly forfeitable vehicle." *Id.* at 69–70.

On remand, the district court fashioned the standard for what is now known as a "*Krimstock* hearing." *See Krimstock v. Kelly*, 506 F. Supp. 2d 249, 251 (S.D.N.Y. 2007) (*Krimstock III*). The district court determined that, at a post-seizure hearing, a municipality must prove, by a preponderance of the evidence, that "a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the City would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action." *Id.* at 252. The Second Circuit affirmed these procedures, which the City did not challenge on appeal. *See Jones v. Kelly*, 378 F.3d 198, 204 (2d Cir. 2004). So too did the New York Court of Appeals, which has adopted essentially the same analytical framework. *See County of Nassau v. Canavan*, 1 N.Y.3d 134, 144–45 (N.Y. 2003) (holding that, when retaining a vehicle, a municipality must "establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding"). Since these decisions, courts within the Second Circuit have routinely looked to *Krimstock III* as the standard for evaluating procedural due process claims asserted by individuals whose vehicles are seized as instrumentalities of crime and retained by the government pending forfeiture proceedings. *See, e.g.*, *Reyes v. County of Suffolk*, 995 F. Supp. 2d 215, 224–26 (E.D.N.Y. 2014);

*Fasciana v. County of Suffolk*, 996 F. Supp. 2d 174, 181–82 (E.D.N.Y. 2014); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 39 (E.D.N.Y.2011).[23]

In the context of vehicles seized pursuant to the forfeiture provision of § 19–506(h)(2), the City's post-seizure procedure satisfies due process. Although the City did not provide hearings before seizing vehicles allegedly subject to forfeiture under § 19-506(h)(2), its procedures provide a "prompt post-seizure hearing to test probable cause for the vehicle's seizure." *Krimstock I*, 306 F.3d at 45. In particular, the City's rules provide that a hearing must be conducted "within five business days following a seizure." 35 R.C.N.Y. § 68–17(c)(1). At this hearing, each of the three *Krimstock* factors must be decided. *Id.* First, the Taxi and Limousine Tribunal must determine whether "probable cause existed for the arrest of the vehicle's operator," *Krimstock III*, 506 F. Supp. 2d at 252, as the City's rules require a determination as to "[w]hether the Owner engaged in the Unlicensed Activity alleged in the summons," 35 R.C.N.Y. § 68–17(c)(1)(A). Second, the tribunal must determine whether the City is "likely to succeed on the merits of the forfeiture action," *Krimstock III*, 506 F. Supp. 2d at 252, as the City's rules require the tribunal to determine whether the statutory requirements for forfeiture—that is, "[w]hether the owner has two or more violations of §§ 19–506(b), (c), or (k) . . . in the previous 36 months"—have been satisfied, 35 R.C.N.Y. § 68–17(c)(1)(B)(i). Finally, the tribunal must decide whether "it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action." *Krimstock III*, 506 F. Supp. 2d at 252; *see* 35 R.C.N.Y. § 68–17(c)(1)(B)(ii). Plaintiffs do not

---

[23] *In Ferrari v. County. of Suffolk*, 845 F.3d 46 (2d Cir. 2016), the Second Circuit held that, at a hearing following the seizure of a vehicle as an instrumentality of crime, the government may "after making out a prima facia case that retention is necessary to protect [its] interests in the financial value of the vehicle and/or in protecting the public from continued unsafe and illegal driving . . . shift the burden of going forward to the title owner to identify an alternative measure that would satisfy the [government's] interests." *Id.* at 48. While *Ferrari* clarified the allocation of burdens in post-seizure hearings, it did not change the three substantive elements of the *Krimstock* analysis.

argue that the City's procedures for conducting post-seizure hearings fail, in any way, to satisfy *Krimstock*'s requirements for procedural due process.[24] Nor is there any evidence that the City has meaningfully departed from its own rules in seizing and retaining any vehicles in this case. Accordingly, by providing for prompt post-seizure hearings at which the probable cause for the vehicles seizures allegedly subject to forfeiture may be tested, the City has provided Calvo and Macon due process.

Moreover, the City further ameliorates any further due process concerns with its retention of vehicles pending forfeiture proceedings by permitting vehicle owners to post bonds and retrieve their vehicles almost immediately after they are seized. On June 4, 2014, for example, Susan Calvo posted a bond and retrieved her vehicle in a matter of hours after it was seized. *See* Def. 56.1 ¶ 48; Pl. 56.1 ¶ 32. While the Court recognizes that posting a bond may impose a substantial financial burden on vehicle owners, the City's procedure of making bonds available—and returning vehicles to their owners—well in advance of its post-seizure hearings provides a form of protection that the Second Circuit has long recognized as an important safeguard in any forfeiture scheme. *See, e.g.*, *Krimstock I*, 306 F.3d at 70 (explaining that a post-seizure hearing should "allow the [neutral magistrate] to consider whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the City's interest in the allegedly forfeitable vehicle"); *see also United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992) (noting that, in the context of civil forfeiture statutes, courts "whenever possible should favor less drastic measures, such as . . . bonds"). Accordingly, the City's undisputed practice of

---

[24] The Court notes, however, that the City's rules do not explicitly provide that the City, and not the vehicle owner, bears the burden of proving the first two *Krimstock* factors by a preponderance of the evidence. Rather, the rules simply state that a "determination will be made" regarding each factor. 35 R.C.N.Y. § 68–17(c)(1). The Court need not address whether the absence of an explicit assignment of burdens under the City's rules renders its procedures constitutionally deficient, however, as Plaintiffs make no such argument in this case.

permitting vehicle owners to retrieve their vehicles by posting bond before a post-seizure hearing reinforces the Court's conclusion that the City's procedures comply with due process.

Plaintiffs argue that the City's procedures for seizing their vehicles nonetheless violate due process because the City does not, as a practical matter, pursue forfeiture against vehicle owners pursuant to § 19–506(h)(2).  Plaintiffs are correct that, during the proposed class period in this case, the City did not bring any forfeiture proceedings under § 19–506(h)(2).  *See* St. Laurent Decl. Ex. 4.[25]  In Plaintiffs' view, this fact is relevant because it suggests that the City does not, as the government did in *Krimstock*, have any interest in "prevent[ing] a vehicle from being sold or destroyed before a court can render judgment in future forfeiture proceedings."  *Krimstock*, 306 F.3d at 64.  The Court disagrees.  By providing that the vehicles belonging to certain repeat offenders are "subject to forfeiture," N.Y.C. Admin. Code § 19–506(h)(2), the law explicitly grants the City an interest in forfeitable vehicles.  The City does not lose this legal interest simply by deciding not to exercise its forfeiture authority—a decision that may benefit many vehicle owners. Although it has not sought forfeiture in the past, the City nonetheless has a legal interest in forfeitable vehicles that may, under certain circumstances, justify its failure to provide a hearing before seizing them.

The Court recognizes Plaintiffs' practical concern that the City could, by invoking its forfeiture authority, retain possession of vehicles pending forfeiture proceedings that may never occur.  The City's post-seizure procedure, however, is tailored to address precisely this concern. At the post-seizure hearing, the tribunal must determine "[w]hether it is necessary that the vehicle remain impounded pending a judgment of forfeiture."  35 R.C.N.Y. § 68–17(c)(1)(B)(ii).  If the City does not intend to seek forfeiture, as Plaintiffs argue, it will surely fail to show that continued

---

[25] After this action was filed, the City has brought at least one forfeiture action against a non-party defendant.  *See* Compl., *City of New York v. Harris*, No. 451060/2017 (N.Y. Sup. Ct. Apr. 24, 2017).

retention is "necessary," and the City would be required to release the vehicle under its own rules. This procedure adequately balances the City's interest in enforcing the forfeiture provisions of City law—if only in the rare case—and the vehicle owner's interest in retaining possession of her vehicle. Thus, even if it is unlikely that the City will ultimately forfeit the vehicles it seizes under § 19–506(h)(2), its procedures for ensuring that it does not retain vehicles longer than "necessary . . . pending a judgment of forfeiture" adequately protect vehicle owners' procedural due process rights. 35 R.C.N.Y. § 68–17(c)(1)(B)(ii).

In sum, the Court concludes that the City's procedure for seizing and retaining vehicles allegedly subject to forfeiture pursuant to § 19–506(h)(2) does not violate the Due Process Clause.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment are both granted in part and denied in part. Specifically, Plaintiffs' motion is granted with respect to all claims asserted by Angel DeCastro and granted with respect to the Fourth Amendment claim and New York constitutional claim asserted by Susan Calvo and Kelly Macon. Defendants' motion is granted with respect to the Due Process claim asserted by Susan Calvo and Kelly Macon. All claims against the New York City Taxi and Limousine Commission (the "TLC"), are dismissed, as "agencies of New York City are not suable entities in § 1983 actions." *Nnebe*, 644 F.3d at 158 n.8. Count Five of the Amended Complaint is dismissed under 28 U.S.C. § 1367(a). The motions are otherwise denied.

No later than October 9, 2017, the parties shall submit a joint letter proposing a briefing schedule on Plaintiffs' motion for class certification.

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Entries 59 and 77.

SO ORDERED.

Dated:   September 30, 2017
         New York, New York


Ronnie Abrams
United States District Judge

35